IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SYED HOSAIN ALI, § | |
| Petitioner, § | |
| § | |
| v. § | No. 3:21-cv-00050-M (BT) |
| § | |
| JIMMY JOHNSON, § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Syed Hosain Ali, a federal detainee at Prairieland Detention Center in Alvarado, Texas, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from detention by the U.S. Immigration and Customs Enforcement (ICE) pending his removal from this country. The District Court referred the matter to the United States magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should DENY the petition and terminate any pending motions as moot.

I.

Ali is a native and citizen of India. He entered the United States in 1984 as a visitor. On March 6, 1990, Ali became a lawful permanent resident when he married a United States citizen. On December 16, 1998, Ali was convicted of assault in criminal court in Dallas County, Texas, and the judgment included an

1

affirmative finding of family violence. Ali was given a Notice to Appear dated June 8, 1999, and he was placed into immigration court removal proceedings.

On September 2, 1999, an immigration judge denied Ali's application for relief and ordered that he be removed to India. On February 28, 2000, the Board of Immigration Appeals dismissed Ali's appeal and affirmed the decision of the immigration judge, making the removal order final. On July 18, 2002, Ali was convicted of sexual assault in criminal court in Dallas County, Texas, and he was sentenced to 13 years' imprisonment. On April 7, 2014, Ali was taken into ICE custody.

On approximately April 11, April 25, and May 5, 2014, Ali refused to complete the travel document application that would permit ICE to facilitate his removal to India. On May 7, 2014, ICE Enforcement and Removal Operations (ERO) served Ali with a Failure to Comply letter, warning him of the consequences for not cooperating with ERO to facilitate his removal to India. Ali eventually completed his part of the travel document application, and ERO sent the necessary paperwork to the Indian Consulate, requesting a travel document so that Ali could be removed to India.

ERO was in regular communication with the Indian Consulate trying to obtain a travel document for Ali. Eventually, on January 16, 2015, Ali was released from ICE custody on an Order of Supervision because ERO was unable to remove him to India. On December 18, 2017, Ali was convicted of failure to register as a

sex offender in Dallas County, Texas. ICE believed Ali could be removed to India, and he was taken back into ICE custody on September 30, 2020.

In October 2020, ERO submitted another travel document application to the Indian Consulate. Following this submission, ERO has been in regular contact with the Indian Consulate checking on its status. On February 1, 2021, Ali was interviewed by the Vice Consul of the Indian Consulate.

At the time of the Government's response, on March 12, 2021, ERO believed that it would be able to get a travel document soon because Ali had been interviewed by the Indian Consulate and supporting documentation was provided to the Consulate to confirm Ali was an Indian citizen. ERO provided the Consulate with a copy of Ali's Indian passport and a completed passport application that contained a foreign Indian address, which India also uses to verify citizenship. Within the last six months, India has issued several India Emergency Certificates for its citizens who had the same supporting documents along with their travel document request. Generally, India takes three to six months to verify its citizen's identities before it issues an India Emergency Certificate because the Indian officials in India complete the verification process.

II.

The Government concedes that Ali has been in post-order detention for more than six months, as his removal order became final on February 28, 2000. Resp. 6 (ECF No. 6). Ali brings this action challenging his prolonged detention as a violation of his due process rights. He argues: (1) he is being illegally detained

3

under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been in custody more than six months; and (2) his removal to India is not significantly likely to occur in the reasonably foreseeable future and no travel documents have been issued. Pet. 6 (ECF No. 3).

Under 8 U.S.C. § 1231(a)(1)(A), the Government has a 90-day period within which to remove aliens who have been ordered removed. The statute provides that, during that time, aliens ordered removed are to be detained. *Id.* § 1231(a)(2). Under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), an alien may file a § 2241 petition if, after six months from the date the removal order became final, he is still detained. *Id.* at 701. When an alien is removable under 8 U.S.C. § 1227(a)(2), he may be detained beyond the 90-day period of removal for the time necessary to execute the removal. 8 U.S.C. § 1231(a)(6) (recognizing that aliens who have been convicted of an aggravated felony "may be detained beyond the removal period"); *see also Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) "read in light of the Constitution's demands, limits an alien's post-removal-detention period to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. Notably, it "does not permit indefinite detention." *Id.* Moreover, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court in *Zadvydas* found that six months constituted a presumptively reasonable period of time for post-order

4

detention. *Id.* at 701. However, that "does not mean that every alien not removed must be released after six months." *Id.*

Under *Zadvydas*, the alien bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also Khan v. Fasano*, 194 F. Supp.2d 1134, 1136 (S.D. Cal. 2001) ("*The burden is on the alien to show that there is no reasonable likelihood of repatriation.*") (emphasis in original). To carry this burden, a petitioner must:

> present something beyond speculation and conjecture. To shift the burden to the government, [the] petitioner must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future.

*Idowu v. Ridge*, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1366 (N.D. Ga. 2002)); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Next, the alien must come forward with a good reason to believe that there is no significant likelihood of removal in the reasonably near future. *Akinwale*, 287 F.3d at 1052; *see also Francis S.M. v. Decker*, 2020 WL 1956053, at *4-*5 (D.N.J. Apr. 23, 2020) (denying a *Zadvydas* claim and noting that although air travel to the petitioner's home country was temporarily suspended due to the COVID-19 pandemic, ICE intended to put the petitioner "on the earliest flights available"). A "lack of visible progress" in the removal process "does not in and of itself meet [a petitioner's] burden of showing

that there is no significant likelihood of removal." *Fahim*, 227 F.Supp.2d at 1367. Conclusory allegations fail to meet an alien's burden of proof. *Gonzalez v. Bureau of Immig. & Customs Enforcement*, 2004 WL 839654, at *2 (N.D. Tex. Apr. 20, 2004).

Ali has been in post-order detention for more than six months, but he has failed to show there is no significant likelihood of his removal to India in the reasonably foreseeable future. Ali summarily argues, "[m]y removal is not significantly likely to occur in the reasonably foreseeable future and no travel documents has [sic] been issued." Pet. 6 (ECF No. 3); *see also* Reply 6-7 (ECF No. 9) (Ali concludes, "[t]he deportation of Ali to India is sufficiently unforeseeable to meet the *Zadvydas* standard."). But he fails to provide any specific reason why there is no significant likelihood of removal in the reasonably foreseeable future. *See Tahtiyork v. U.S. Dept. of Homeland Security*, 2021 WL 389092, at *2 n.1 (W.D. La. Jan. 12, 2021) ("Even if Petitioner was in custody beyond the presumptively reasonably removal period, he has provided nothing more than a conclusory allegation that there is no significant likelihood of his removal in the reasonably foreseeable future.") (citing *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (noting aliens must present sufficient evidence establishing that there is no significant likelihood of removal in the reasonably foreseeable future, and not merely offer conclusory statements)). When a petitioner comes forward with nothing more than conclusory allegations that he will not be released in the

6

reasonably foreseeable future, he fails to shift the burden to the government under *Zadvydas*. *See Andrade*, 459 F.3d at 543-44.

The evidence also demonstrates that ERO has been actively engaged in the removal process here and followed up with Indian officials to obtain Ali's travel documents. For example, Ali was interviewed by the Vice Consul of the Indian Consulate, and supporting documentation was submitted to verify his Indian citizenship. Considering ERO's knowledge and experience, especially with respect to India's recent push to issue travel documents, ICE reasonably believes that a travel document will be issued and Ali's removal to India will take place imminently.

Not every detainee in custody beyond the six-month presumptively reasonable period prescribed by the Supreme Court in *Zadvydas* is entitled to release. Ali has failed to demonstrate why his removal to India is unlikely to occur in the reasonably near future, and the evidence shows that progress is being made with respect to his removal. Ali, therefore, has not met his burden of showing there is not a significant likelihood of removal in the reasonably foreseeable future. *See Lama v. Barr*, 2021 WL 456568, at *1 (W.D. La. Jan. 21, 2021) (finding that the petitioner failed to meet his burden under *Zadvydas* where he "has not alleged any reason why his removal is unlikely to occur in the reasonably near future"), *rec. adopted*, 2021 WL 449746 (W.D. La. Jan. 21, 2021); *Henry v. Barr*, 2020 WL 6877703, at *3 (N.D. Tex. Oct. 30, 2020) (finding that the petitioner did not meet his burden under *Zadvydas* where ICE obtained a valid travel document from the

7

Jamaican Government, and the petitioner was scheduled to be removed on October 29, 2020), *rec. adopted Henry v. Moore*, 2020 WL 6873604 (N.D. Tex. Nov. 23, 2020).

Last, the Court recognizes that the Government's efforts to secure travel documents for Ali to return to India must be viewed through the lens of our present circumstances. The world is grappling with a COVID-19 pandemic, and it has impacted both national and international travel. As is relevant here, India has the second highest number of recorded COVID-19 cases. https://www.cnbc.com/2021/07/23/coronavirus-how-india-is-doing-now-after-delta-variant-spread.html (last visited Aug. 26, 2021). And the pandemic worldwide has "delayed essentially everything." *Henry*, 2020 WL 687703, at *4 (recognizing the impact of the COVID-19 pandemic and how it has "delayed essentially everything."); *see Shah v. Wolf*, 2020 WL 4456530, at *3 (N.D. Tex. July 13, 2020), *rec. adopted*, 2020 WL 4437484 (N.D. Tex. Aug. 3, 2020) (denying *Zadvydas* claim despite delay caused by COVID-19; petitioner's arguments that pre-pandemic travel authorization was "obsolete" was supported only by speculation and conjecture and did not suffice to carry his burden*); see also Ramirez v. Searls*, 2020 WL 2748203, at *2 (W.D.N.Y. May 27, 2020) (denying *Zadvydas* claim despite the delay caused by COVID-19 because the Department of Homeland Security was in possession of a travel document and had also indicated that it was planning to remove the petitioner within a month).

Considering the foregoing, Ali has failed to come forward with evidence suggesting he will not be removed in the reasonably foreseeable future. Therefore, Ali fails to demonstrate any likelihood of success on his *Zadvydas* claim.

## Conclusion

For the foregoing reasons, the Court should DENY Ali's petition and terminate any pending motions as moot.

SIGNED September 24, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).